## BETHELL v. DEMARET.

1. The authority conferred by a State on its Supreme Court to hear and determine cases, is not the kind of authority referred to in the 25th section of the Judiciary Act, which gives this court a right to review the decisions of the highest State court, where is drawn in question the validity of a statute of, or *an authority exercised under any State*, on the ground of their being repugnant to the Constitution, &c., . . and the decision is in favor of such validity.

2. The decision of a State court which simply held that promissory notes, given for the loan of "Confederate currency," together with a mortgage to secure the notes, were nullities, on the ground that the considera-

---

* 3 Mason, 520.

Argument in support of the writ.

tion was illegal, according to the law of the State, at the time the contract was entered into, is not a decision repugnant to the Constitution.

ON motion to dismiss a writ of error to the Supreme Court of Louisiana. The case was this:

Bethel brought suit against Demaret and others in a district court of the State, to enforce a mortgage given to secure the payment of two notes of $7500 each, given by them for the loan of Confederate currency, on the 2d April, 1862, payable in two and three years after date, with interest. The plaintiff recovered judgment, and the mortgaged premises were directed to be sold to pay it. Whereupon an appeal was taken to the Supreme Court of the State, where the judgment was reversed and the suit dismissed. The decision was placed on the ground that the Confederate money was illegal, and constituted no valid consideration for the two notes and mortgage at the time they were executed, according to the code of the State.* The court say, in its opinion, " The plaintiff is endeavoring to enforce a contract, the consideration of which was Confederate currency. The nullity of contracts founded upon that unlawful currency has been frequently determined." The plaintiff then brought the case here, assuming it to come within that clause of the 25th section of the Judiciary Act, which gives a right of review to this court of the judgment in the highest State court, " where is drawn in question the validity of a statute of, *or an authority exercised under any State,* on the ground of their being repugnant to the Constitution, &c., . . and the decision is in favor of such validity."

*Mr. J. A. Campbell* now moved to dismiss the writ for want of jurisdiction.

*Mr. Miles Taylor, in support of the writ:*

When the mortgage in this case was given, " Confederate notes " were the only money of the South. They were habitually in use there for procuring the necessaries of life,

---

* Art. 1887, 1889, 2026; Schmidt v. Barker, 17 Annual, 261.

and for paying for services of every kind.    And by all principles of equity a mortgage to secure the payment of a loan of them was a " contract."    In 'this case we sue on them, and the defence is set up that the contract was unlawful. We plead the obligation of the contract, and the provision of the Constitution which forbids a State to violate its obligation.    The Supreme Court of Louisiana decides. against us.    It decided, in effect, that the contracts contained in the obligations sued on, were null and void, because they were given for Confederate money; and, in consequence thereof, the court exercised its power, under the authority of the. State of Louisiana, to prevent the plaintiff from enforcing the payment of these obligations, so as not only to impair the obligation of the contracts in question, but to destroy them altogether.

*Mr. Campbell, contra,* in support of *his motion:*

The Supreme Court of the State decided that a loan of Confederate money could not be a lawful cause of a contract. The judges did not consider the court in which they were sitting as having been at any time independent of the laws and statutes of the United States.  Those laws and the acts of the. departments of the government have never regarded the Confederate States as anything more than a name, or the notes otherwise than as without authority, and for a purpose illegal, and hostile to the government of the United States; issued to sustain and to promote what was declared to be an existing insurrection, and carried the evidence of that fact on their face.

The question now submitted is, whether this judgment presents any matter for the review of the Supreme Court of the United States?    Does the Constitution of the United States, or any treaty or law, authorize or protect the circulation of these Confederate notes, or prescribe that they shall be a basis for a contract of loan?    The answer must be in the negative.

Does the adjudication that they do not form a legal cause for a contract of loan by the Supreme Court of the State

violate any part of the Constitution, laws or treaties of the United States? The answer must be the same.

The decision of the State court is, that the circulation of those notes by any party for any cause, affected the public order and disturbed the public peace of the United States. Unquestionably this is true, and beyond this the court did not go.

Mr. Justice NELSON delivered the opinion of the court.

There was no Federal question presented to the court below by the plaintiff in error, so far as appears from the record. There is no statute of a State in question here.

But it is insisted that there was an authority under the State of Louisiana exercised in the case drawn in question, and which was repugnant to the Constitution, and the decision in favor of its validity, and that is, the Supreme Court of the State were acting under the authority of the State at the time its decision was rendered.

There are two answers to this ground: 1st. That the authority conferred on a court to hear and determine cases in a State, is not the kind of authority referred to in the 25th section, otherwise every judgment of the Supreme Court of a State would be re-examinable under the section; and 2d. The decision of the court was not repugnant to the Constitution. It simply held that the promissory notes, together with the mortgage in question, were nullities, on the ground that the "Confederate currency," which constituted the consideration, was illegal according to the law of the State at the time the contract was entered into.

As no Federal question appears in the record the motion to dismiss must be

GRANTED.