## COLUMBIAN NAT. LIFE INS. CO. v. WALLERSTEIN.

### No. 5993.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1937.

Rehearing Denied Aug. 2, 1937.

Fred B. Shoaff, of Fort Wayne, Ind., and Frederick H. Nash, of Boston, Mass., for appellant.

Floyd O. Jellison, of South Bend, Ind., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal presents the question of the right of an insurer, obligated under three policies to pay to its insured benefits arising by reason of the total disability of the latter, and in case of his death, a certain sum to his beneficiaries, to bring an action in tort to recover for the fraud which induced the issuance of the policies to the insured. A demurrer to the declaration was sustained, hence no question of fact is presented by the appeal.

Appellant brought suit against a policyholder to recover damages in the amount of $20,000 for fraud alleged to have been practiced upon it, by reason of which it was induced to issue three policies on appellee providing for the payment of a total of $15,000 in case of his death, and monthly benefits aggregating $100 in case of total permanent disability, and a waiver of premiums in the latter contingency. The policies all provided that they should be incontestable after one year from date of issue, except for non-payment of premiums. Appellant alleged that appellee applied for the insurance in September, 1928, stating in his application that he had at that time no disease or disorder and had never had any; that he had never consulted a physician for a series of named diseases including diabetes. Appellant further alleged that such answers were untrue in that appellee had been examined for diabetes in the fall of 1927 and under continuous treatment for the disease ever since that time; in October 1929, immediately following the expiration of the contestable period, appellee filed a claim for disability benefits with a second insurance company in which he carried policies issued in 1921, stating that he had been suffering from diabetes for two years prior to October 17, 1929, and had been disabled from engaging in any occupation for profit from May, 1928, by reason of that disease. He submitted with his claim, a certificate from his physician corroborating these statements, and stating further that the disease was incurable, but partially controlled by the use of insulin, and that he had been consulted by appellee two years before. Appellee collected disability benefits under this claim for a period from May 1, 1928, to April, 1930. In September, 1933, appellee filed claim with appellant for disability benefits and waiver of premiums alleging that he had been totally disabled since September 2, 1933, as a result of diabetes and other diseases. Upon investigating this claim, appellant for the first time learned that appellee had suffered such disability since before the issuance of the policies here in question. It thereupon brought the action to recover damages for the fraud practiced upon it.

The theory upon which the action was predicated is that appellant was absolutely liable under its contracts by reason of the incontestable clauses in each, and it could not successfully defend any action brought by the insured, hence its only recourse was to admit liability on the contracts, and sue in tort to recover for the fraud in their inducement. In support of its theory it argued that a party induced to enter into a contract by fraudulent misrepresentations has an election of remedies: (1) To defend an action brought on the contract, setting up the fraud as a defense; (2) to rescind the contract and sue in equity to cancel; (3) to affirm the contract, keeping what he had received under it and bring an action for the recovery of damages sustained by him. In this case, however, appellant was precluded by the terms of the contract from exercising the first two options, hence must rely for relief upon the third, which, it argues, is not to be construed as an attack upon the validity of the contracts, but rather is a recognition of their validity and incontestability.

In overruling appellant's contention and sustaining the demurrer, the District Court stated: "If plaintiff is permitted to succeed under its theory, it is doing indirectly what it has contracted it cannot do directly. It would be rather an anomalous proceeding to hold that defendant may recover against plaintiff under the terms of his fraudulent contract and plaintiff would not be permitted to defend any suit because it has contracted away its right to do so, and yet hold that defendant is liable in damages to the plaintiff. * * * The incontestability clause is * * * in the nature of a statute of limitation and repose, and while conscious fraud practiced in inducing another to act, to his detriment, is extremely obnoxious, yet the law recognizes that there should be a limitation of time in which an action may be brought or a defense set up. The parties in the case at bar have contracted that this limitation shall be one year. Many hardships and much injustice result from our statutes of limitation, and yet such statutes have universally been upheld as in the best interests of society as a whole. * * * These simple illustrations show the stringent character of the limitation statutes and are no harsher than the limitation in the policy of insurance voluntarily placed there by plaintiff in this suit." With these observations of the District Court we fully agree.

Before this court, appellant strongly urged upon our consideration the case of United States v. Whited & Wheless, 246 U.S. 552, 38 S.Ct. 367, 368, 62 L.Ed. 875, which held that where there are two remedies for the protection of the same right, one may be barred, and the other not. In

that case, the Government brought suit to recover the value of public lands described in a patent alleged to have been procured by fraud. A statute then in effect provided: "That suits by the United States to vacate and annul any patent * * * shall only be brought within five years from the passage of this act." (43 U.S.C.A. § 1166 note.) The suit for damages was brought sixteen years after the issuance of the deed, and the Court there held that the statutory bar to a suit to annul the patent did not also bar a suit for the value of the land fraudulently procured to be patented. Appellant relies upon this in support of its proposition that although, under the terms of the policies, two remedies are barred to it, the third is not barred, and upon that it should be allowed to maintain its suit. However, we must observe a very important difference in the reasons for the imposition of the limitations in the two cases. In the Whited & Wheless Case, the purpose of the statutory limitation was to insure stability of land titles. As explained by the Court, the necessity for this "grew out of the insecurity and loss of confidence of the public in the integrity and value of patent titles to public lands, which had been occasioned by conflicting claims, chiefly between land grant railroad companies and the Government, which had resulted in many suits being commenced to cancel patents. * * * As might well be anticipated, therefore, this statute, originating in such conditions, was limited in its terms to suits 'to vacate and annul' patents, without any reference being made to suits to recover the value of the land when patents were fraudulently obtained * * *."

 In the case of insurance policies, on the other hand, the purpose of statutory enactments requiring the inclusion of incontestability clauses in all policies of life insurance, is to protect the insured and his beneficiary from contests arising out of the policy after the expiration of the statutory period, and to do away with litigation on it. By their contract, many insurance companies have voluntarily limited their rights even further than required by statutes. That is true in the case at bar in two respects. By the law of Indiana, an insurer under a life policy is required to limit its right to contest to two years from the date of issue. Burns' Indiana Stat.Ann.1933, § 39-801(3). Here, however, the period was limited to one year. There is no requirement that the incontestability clause attach to provisions of the policy relating to dis-

ability benefits. Stroehmann et al. v. Mutual Life Insurance Company, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. ——. Here, however, the insurer did not see fit to exclude such provisions from the operation of the clause. The effect of the clause remains the same, whether imposed by statute or by the voluntary action of the insurer and its insured. It is to be noted that by the terms of the contract, the application is incorporated and made a part thereof. This is also in accordance with the requirements of the Indiana statute. We see no escape from the conclusion that the present action constitutes an attack upon the policy since the fraud alleged arises out of admitted misstatements in the application. The application is just as much covered by the incontestable clause as is the balance of the policy. "The courts have declared the clause available to the honest seeking its beneficence, despite the fact that it makes indefensible such grossly reprehensible fraud as [the insured] admits." New York Life Insurance Co. v. Kaufman (C.C.A.) 78 F. (2d) 398, 402. To say that the policy is incontestable, and then permit an attack upon the application which by statutory requirement and by its own terms is an integral part of the policy, is to defeat the purpose of the incontestability clause, and, despite the obvious injustice of the result here effected, we have no alternative but to affirm the action of the District Court in sustaining the demurrer to the complaint.

Judgment affirmed.

LINDLEY, District Judge (dissenting).

Fraudulent representations inducing the execution of a contract obviously affect the validity of the contract, but they also constitute a tort. The injured party has the choice of an action of deceit, independent of the contract, rescission of the contract, or defending against its enforcement. This action of deceit is entirely distinct from any rights connected with the contract and may be brought against any party who is guilty of misrepresentation, even though he is not a party to the contract and has received no personal benefit from such representations. See Page on Contracts, §§ 339, 340.

The authorities are voluminous to the effect that such an action is not based at all upon the contract, but solely upon the tort of the party against whom complaint is made. Independent of the execution of the contract, he has committed a civil wrong for which the law affords compensation to the extent of the damages suffered as a re-

354

sult thereof. The contract he executes may be incontestable; it may be fully performed, but these facts in no wise affect or detract from the liability he has created by his tort.

I find no implication in either the Indiana statute or the insurance policy to create an estoppel against the assertion of the remedy for the tort. Rather, in order to create such an estoppel, either the contract of the parties or the statute of the state must be broadened to include provisions not only for incontestability of the contract but also for nonliability for the tort committed.

It seems to me, therefore, that to permit the recovery sought by appellant in no way goes beyond any intent of the statute or the contract of the parties. Neither cuts off any independent liability for deceit. The insurance company must still perform its contract, but the one committing the tort must likewise pay such damages as result from his wrongful act. It seems to me that the judgment should be reversed.